**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DAULTYN JAMES COMPARATO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21 CV 448 MTS |
| | ) |
| ANN PRECYTHE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the application of self-represented plaintiff Daultyn James Comparato, an incarcerated person at Southeast Correctional Center ("SECC"), to proceed in the district court without prepaying fees or costs. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $5.00. Additionally, for the reasons discussed below, the Court will allow plaintiff to file an amended complaint.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The

agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff did not submit a certified copy of his inmate account statement, but based upon his averments in the instant motion, the Court has determined to assess an initial partial filing fee of $5.00, an amount that is reasonable based upon the information before the Court. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances.").

**Legal Standard on Initial Review**

This Court is required to review a complaint filed *in forma pauperis*, and must dismiss it if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-

pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights arising out of several incidents with correctional officers working at Potosi Correctional Center ("PCC"). He names the following three defendants: Anne Precythe, Director of the Missouri Department of Corrections ("MDOC"); Bill Stein, Warden, PCC; and Jennifer Price, Functional Unit Manager, PCC. He sues both Precythe and Stein in their official capacities only, and does not state in which capacity he sues Price.[1]

Plaintiff alleges that from May 1, 2020 until his transfer from PCC to SECC on December 4, 2020, he was harassed, assaulted, abused, and neglected at PCC. Plaintiff states that on May 1, 2020, Correctional Officer ("CO") S. Smith refused plaintiff and his cellmate their dinner trays.

---

[1] Plaintiff makes no allegations against defendant Jennifer Price. She is only identified as a defendant in the caption of the complaint; her name does not appear in the body of the complaint.

At 8:15 p.m., after requesting several additional times for their dinner trays, plaintiff told staff that he had a prison-made knife. Staff immediately attempted to cuff plaintiff and conduct a cell search. Plaintiff refused to be cuffed and responded that he would consent to a cell search only if staff served him dinner. Plaintiff was sprayed twice with pepper spray. He then "jammed [his] cell door" and told the staff that he would only unjam the door if he and his cellmate were served dinner. Sergeant Hartman then sprayed plaintiff's cell with pepper spray seven times. In response, plaintiff un-jammed his door.

Plaintiff and his cellmate were taken to another cell, "pushed and slammed on the floor," "not able to see," and "stripped naked and not allowed any clothing until the early morning of May 2, 2020." Plaintiff was placed on a "limited property" restriction by which the staff would return one item of plaintiff's property, of staff's choosing, every 24 hours. Plaintiff alleges this limited property restriction was harsher than the normal limited property restriction, which would allow an inmate to request the return of a particular item of clothing every 8 hours. Plaintiff was also placed on an alternative meal of only meatloaf during his limited property restriction.

Plaintiff states that after this incident on May 1, 2020, he was retaliated against by several correctional officers at PCC. He filed Prison Rape Elimination Act ("PREA") reports against Sergeant Morgan on five separate occasions. Plaintiff alleges that Morgan harassed him by repeatedly referring to him as "baby girl." Plaintiff states he was sexually molested as a child by an individual who called him "baby girl." Plaintiff states this continued harassment by Morgan caused him enough distress that he filed one PREA report while on suicide watch.

Plaintiff states that on May 14, 2020, he had an altercation with CO Conrad. Plaintiff states that at the time he was cuffed and returning to his cell from being on suicide watch. CO Conrad asked plaintiff to find his property, and plaintiff identified two bags of his property. Apparently

CO Conrad did not believe that both bags were plaintiffs, and when plaintiff went to reach for the second bag, Conrad "yanked me he swung me around trying to get me to the floor once he realized I would not go down he swung 'my face' into the wall . . . . After I saw the blood on my glasses and my clothes and the floor I said 'F*** No' and started kicking them while Conrad held me on the floor. I was escorted to medical to get my right eyebrow butterfly stitched leaving me with a scar above my eyebrow that should not be there!"

After plaintiff returned to his cell from medical, he threatened suicide. Plaintiff told CO Pierce and an unnamed trainee that he was suicidal, but CO Pierce stated "he ain't for real," and both guards left. At the correctional officers' shift change, other inmates informed CO Barber that plaintiff was planning to hang himself. Shortly afterward, CO Davis and Sergeant Johnson saw plaintiff in his cell attempting to hang himself. They sprayed plaintiff with pepper spray and placed him on full suicide watch.

Plaintiff states that on November 19, 2020, during showers, he was thrown down, punched, and "received dislocated fingers" from CO Jones and CO S. Smith. However, plaintiff provides no specific facts to give any context to these allegations.

For relief, plaintiff seeks $1 million in damages. He states he is "entitled to recover these damages because my life is worth more than money but will not let correctional facilities abuse, neglect, and continue to harass inmates to the point of suicide."

**Discussion**

Plaintiff's complaint is subject to dismissal on initial review under 28 U.S.C. § 1915(e)(2) for several reasons. First, plaintiff has sued three individuals who were not involved directly in any of the alleged constitutional violations. Government officials may not be held liable for unconstitutional conduct under a theory of respondeat superior. *Rogers v. King*, 885 F.3d 1118,

1122 (8th Cir. 2018). Vicarious liability is inapplicable to § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). As such, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *see also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Because plaintiff does not allege defendants directly participated in any of the alleged constitutional violations, the Court will dismiss defendants Precythe, Stang, and Price from this action.

Additionally, plaintiff has sued these defendants in their official capacities only. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). Moreover, in the absence of a waiver, the Eleventh

Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

After carefully reviewing and liberally construing the complaint, the Court concludes that plaintiff has not stated a plausible nor viable claim against the three named defendants under 42 U.S.C. § 1983. For this reason, plaintiff's complaint must be dismissed for failure to state a claim. Within his complaint, however, plaintiff makes serious allegations against several individual correctional officers working for PCC. If plaintiff seeks to bring a § 1983 action against these individual officers, the Court will allow plaintiff to file an amended complaint on a court-provided form. Plaintiff is advised that the amended complaint will replace the original complaint. *E.g.*, *In re Wireless Tele Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).

## Instructions for Filing Amended Complaint

In the "Caption" section of the amended complaint, plaintiff must state every defendant whom he wants to sue. If plaintiff is suing an individual, he must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue. Plaintiff should also indicate whether he intends to sue the defendant in his or her individual capacity, official capacity, or both. As discussed above, suing a state employee only in their official capacity subjects the defendant to dismissal on initial review.

Additionally, plaintiff should avoid naming an individual as a defendant unless that person is directly related to the alleged constitutional violation, *e.g.*, the perpetrator. Finally, plaintiff must include enough factual details in his allegations so the Court may evaluate the conduct of the defendants. For example, stating merely that "during showers I was thrown down, punched, and received dislocated fingers from [correctional officers]," does not allow the Court to evaluate whether the prison officials used excessive force in violation of the Eighth Amendment. To evaluate whether plaintiff can state a plausible claim, the Court must inquire "whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal. The Court will allow plaintiff thirty days to amend his complaint in accordance with these instructions.

### Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case

progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in district court without prepaying fees or costs, Doc. [3], is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall pay an initial filing fee of $5.00 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank Prisoner Civil Rights Complaint form.

**IT IS HEREBY ORDERED** that within **thirty (30) days** of the date of this Memorandum and Order, plaintiff shall file an amended complaint in accordance with the instructions set forth above.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel, Doc. [2], is **DENIED without prejudice**.

**If plaintiff fails to timely file an amended complaint in compliance with this Memorandum and Order, the Court may dismiss this action without prejudice and without further notice.**

Dated this 24th day of August, 2021.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE