**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DAULTYN JAMES COMPARATO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00448-MTS |
| ) | |
| SEAN SMITH, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' SUPPLEMENTAL TRIAL BRIEF RE MOTION TO SEPARATE ADMINISTRATIVE EXHAUSTION ISSUE TO A PHASE ONE BENCH TRIAL**

**I.    BACKGROUND ON ADMINISTRATIVE EXHAUSTION**

**A. Failure to Exhaust is Fatal to A Claim**

The exhaustion provision of the Prison Litigation Reform Act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Each claim must be exhausted, and failure to exhaust is fatal to the unexhausted claim (although not necessarily the entire lawsuit). *See Abdul-Muhammad v. Kempker*, 486 F.3d 444, 446 (8th Cir. 2007) ("If an inmate fails to exhaust one or more discrete claims raised in a § 1983 complaint, the PLRA requires only that

1

the unexhausted claim or claims be dismissed . . . .") *citing Jones*, 549 U.S. at 221 (2007) ("As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad."). If exhaustion was not completed at the time of filing, dismissal is mandatory. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

A plaintiff cannot opt-out of available administrative procedures. It does not matter whether a plaintiff believes the administrative steps would be not be fruitful. Section 1997e(a) of the PLRA "does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are "available." *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (holding that the plaintiff failed to exhaust when procedures existed and he failed to follow them, even when the defendant told him his grievance would not yield a different result).

### B. How Failure to Exhaust Is Shown

Failure to exhaust is an affirmative defense. *Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . .") The PLRA requires exhaustion of "such administrative remedies as are available . . . ." 42 U.S.C. § 1997e(a). It is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion. *Muhammad v. Mayfield*, 933 F.3d 993, 1001 (8th Cir. 2019).

In other words, to determine whether administrative remedies were exhausted, a defendant provides evidence of its available procedures and its administrative record of the steps a plaintiff took (or, failed to take) before filing suit. Based on this record, the court determines whether the plaintiff took the steps required to exhaust such that

2

his claim or claims may proceed to jury trial.

### C. Failure to Exhaust Should be Tried to a Judge and Not a Jury

While the Eighth Circuit has not squarely held that exhaustion under the PLRA should be decided by the court instead of a jury, other district courts within the circuit typically have a judge-only evidentiary and decision phase on the issue. *See, e.g., Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (the district court took testimony and decided the issue); *Kelsey v. Cobb*, 4:22-CV-00064 JM-PSH, 2024 WL 1589329, at *1 (E.D. Ark. Mar. 18, 2024), report and recommendation adopted, 4:22-CV-00064 JM-PSH, 2024 WL 1585623 (E.D. Ark. Apr. 11, 2024) ("Whether or not [plaintiff] has exhausted his administrative remedies before filing this case is an open issue that could be raised again at trial; it therefore serves judicial economy to decide that issue now before trial.")

Seven other circuits have considered the issue and agree that "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013); *see also Messa v. Goord*, 652 F.3d 305, 308–09 (2d Cir. 2011) (per curiam); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Bryant v. Rich*, 530 F.3d 1368, 1373–77 (11th Cir. 2008); *Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1166, 1170–71 (9th Cir. 2014) (en banc); *Lee v. Willey*, 789 F.3d 673, 677–78 (6th Cir. 2015) ("disputed issues of fact regarding exhaustion under the PLRA present[ ] a matter of judicial

3

administration that [can] be decided in a bench trial").[1]

## II. THE RECORD ON PLAINTIFF'S FAILURE TO EXHAUST THAT DEFENDANTS' INTEND TO PRESENT TO THE COURT.

### A. The Missouri Department of Corrections Offender Rulebook

Defendants will admit into evidence the Missouri Department of Corrections (MDOC) Offender Rulebook, which includes a section entitled "Offender Grievance Procedure." MDOC's grievance procedure has three mandatory steps:

> First, an inmate files an Informal Resolution Request (IRR). If dissatisfied with the response to the IRR, the inmate files a formal grievance. . . . If dissatisfied with the response to the grievance, the

---

[1] Plaintiff evidently agrees. In his Motion in Limine VIII, Plaintiff writes:
> [M]ost circuits have held that exhaustion of administrative remedies is a question of law to be determined by a judge. *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013); *see also Foulk v. Charrier*, 262 F.3d 687, 695 (8th Cir. 2001) ("the question of whether failure to exhaust administrative remedies" is a "legal question[s]"); *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2008) ("the judge must decide exhaustion even if that requires him to make findings of fact"); *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008) ("Instances exist—such as those involving jurisdictional issues—when judges may resolve factual questions. One such instance is when a judge must decide a motion to dismiss for failure to exhaust nonjudicial remedies."); *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) ("Messa is incorrect that the presence of disputed material facts converts exhaustion into a jury issue. Matters of judicial administration often require district judges to decide factual disputes that are not bound up with the merits of the underlying dispute."); *Albino v. Baca*, 747 F.3d 1162, 1170–71 (9th Cir. 2014) ("disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue"). . . . *Pirl v. Sergeant*, 619 F. Supp. 3d 531, 541 (W.D. Pa. 2022) (internal citation omitted) (precluding Defendants from introducing evidence that inmate did not exhaust his administrative remedies at trial and stating "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.").

Plaintiff's Motion in Limine at pp. 10-11.

4

inmate appeals within seven days, or the appeal is considered abandoned. . . . After receiving the appeal response, the offender has exhausted the grievance process.

*Porter v. Sturm*, 781 F.3d 448, 450 (8th Cir. 2015) (internal citations and quotations omitted).

The Offender Rulebook was available to Plaintiff at all times. As correctly summarized in *Porter*, the Offender Rulebook details the three stages of administrative complaint and remedy. The Offender Rulebook unambiguously explains to inmates, "You are required to complete the grievance process prior to filing a lawsuit in the federal courts."

The Offender Rulebook sets forth deadline for each stage of grievance. The complaining inmate must file the IRR form within **fifteen calendar days** of the incident. After receiving an unsatisfactory response, or not receiving a response within a specified period of time, the inmate must file an Offender Grievance form within **seven calendar days**. If dissatisfied with the response to the Offender Grievance form, or not receiving a response within a specified period of time, the inmate must file the Offender Appeal form within **seven calendar days**. If the Offender Appeal yields an unsatisfactory response or no response within a specified period of time, "the grievance process is exhausted," according to the Offender Rulebook.

### B. Count I – Excessive Use of Force Against Defendant Conrad on May 14, 2020.

Defendants will introduce Plaintiff's grievance record and elicit testimony from Plaintiff regarding the same. Plaintiff did not file any IRR for the May 14, 2020 Use of Force event, nor did he file an Offender Grievance Form, nor a Grievance Appeal.

5

Plaintiff obliquely mentions May 1, 2020 events in an IRR filed on October 22, 2020. Even if this is generously read to refer to the May 14, 2020 events, it is significantly outside the fifteen calendar day deadline, which ran on May 29, 2020. Nor does it constitute the remaining two steps.

For that reason, Defendants assert that Count I must be dismissed and a jury trial would be a waste of time and resources. This will limit evidence because the May 14, 2020 video and witnesses will no longer be relevant to Plaintiff's case in chief. It will also narrow the scope of jury questions and release Defendant Conrad.

### C. Count II – Deliberate Indifference to a Serious Medical Need Against Defendant Pierce on May 14, 2020

Defendants will introduce Plaintiff's grievance record and elicit testimony from Plaintiff regarding the same. Plaintiff did not file any IRR for the May 14, 2020 Deliberate Indifference event, nor did he file an Offender Grievance Form, nor a Grievance Appeal.

Plaintiff obliquely mentions May 1, 2020 events in an IRR filed on October 22, 2020. Even if this is generously read to refer to the May 14, 2020 events, it is significantly outside the fifteen calendar day deadline, which ran on May 29, 2020. Nor does it constitute the remaining two steps.

For that reason, Defendants assert that Count II must be dismissed and a jury trial would be a waste of time and resources. This will limit evidence because a second May 14, 2020 video and witnesses will no longer be relevant to Plaintiff's case in chief. It will also narrow the scope of jury questions and release Defendant Pierce.

### D. Count III – Excessive Use of Force against Defendant Jones on

**November 19, 2020**

Defendants will introduce Plaintiff's grievance record and elicit testimony from Plaintiff regarding the same. Plaintiff filed an IRR for the November 19, 2020 Use of Force event on November 24, 2020. The grievance file indicates Plaintiff was transferred to SECC on December 4, 2020 at his request. It does not indicate whether Plaintiff received further response. Regardless, the evidence shows that Plaintiff was either satisfied with the transfer as a remedy, or abandoned his grievance, because no Grievance Form or Grievance Appeal was filed.

For that reason, Defendants assert that Count III must be dismissed and a jury trial would be a waste of time and resources. This will limit evidence because a Plaintiff's witnesses and evidence regarding Defendant Jones' purported animus based on sexual orientation will no longer be proffered in Plaintiff's case in chief. It will also narrow the scope of jury questions and release Defendant Jones.

### E. Count IV – Excessive Use of Force Against Defendant Smith on November 19, 2020

Defendants will introduce Plaintiff's grievance record and elicit testimony from Plaintiff regarding the same. Plaintiff filed an IRR for the November 19, 2020 Use of Force event on November 24, 2020. The grievance file indicates Plaintiff was transferred to SECC on December 4, 2020 at his request. It does not indicate whether Plaintiff received further response. Regardless, the evidence shows that Plaintiff was either satisfied with the transfer as a remedy, or abandoned his grievance, because no Grievance Form or Grievance Appeal was filed.

For that reason, Defendants assert that Count IV must be dismissed and a jury

trial would be a waste of time and resources. It will also narrow the scope of jury questions and would release Defendant Smith.

### F. Count V – Failure to Intervene and Protect from Attack Against Defendant Smith on November 19, 2020

Defendants will introduce Plaintiff's grievance record and elicit testimony from Plaintiff regarding the same. Plaintiff filed an IRR for the November 19, 2020 Use of Force event on November 24, 2020. The grievance file indicates Plaintiff was transferred to SECC on December 4, 2020 at his request. It does not indicate whether Plaintiff received further response. Regardless, the evidence shows that Plaintiff was either satisfied with the transfer as a remedy, or abandoned his grievance, because no Grievance Form or Grievance Appeal was filed.

For that reason, Defendants assert that Count V must be dismissed and a jury trial would be a waste of time and resources. This will limit evidence because a Plaintiff's witnesses and evidence regarding Defendant Jones' purported animus based on sexual orientation will no longer be proffered in Plaintiff's case in chief. It will also narrow the jury questions and release Defendant Smith.

## III. PHASING THE TRIAL REDUCES POTENTIAL FOR JURY CONFUSION.

It is obvious that reducing claims (should Defendant prevail on its exhaustion defense for one or more counts) creates efficiency by narrowing the scope of trial. But even setting that aside, presentation of the exhaustion information is highly likely to confuse the jury.

The exhaustion issue requires introduction of the Offender Rulebook and

testimony regarding its terms and Plaintiff's compliance with it. Yet, the Parties agreed, and an *in limine* order entered, that introducing policies as direct evidence is substantially more prejudicial than probative to the overall question of whether Plaintiff's Constitutional rights were violated.

Policies neither expand nor limit Constitutional rights. So when policies are introduced, along with evidence about the Parties' adherence or violations, it may muddy the jury's reasoning. The jury may become preoccupied with concerns about what the policies required of the Parties, and infer guilt or innocence based on their terms.

Accordingly, Defendants request this Court exercise its inherent power under Rule 42(b) and hear the administrative exhaustion defense separate from the jury.

June 2, 2025

Respectfully submitted,

**ANDREW BAILEY**
Attorney General

*/s/ Alicia I. Dearn*
Alicia I. Dearn, Mo. Bar #64623
Adam J. Merello, #72420MO
Assistant Attorneys General
815 Olive Street, Suite 200
St. Louis, MO 63101
Alicia.Dearn@ago.mo.gov
Adam.Merello@ago.mo.gov

*Attorneys for Defendants*